UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Heather J. S., | Case No. 20-cv-1465 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

Edward C. Olson, Disability Attorneys of Minnesota, 331 Second Avenue South, Suite 890, Minneapolis MN 55401 (for Plaintiff); and

James D. Sides, Social Security Administration, Office of the General Counsel, 1301 Young Street, Suite A702, Dallas, TX 75202 (for Defendant).

## I.  INTRODUCTION

Plaintiff Heather J. S. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final administrative decision of the Commissioner of Social Security following a continuing disability review ("CDR"), finding that she was no longer entitled to previously-granted disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*.  This matter is before the Court on the parties' cross motions for summary judgment (ECF Nos. 20 & 22).  The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28

---

[1] The Court has substituted Acting Commissioner Kilolo Kijakazi for Andrew Saul.  A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name."  Fed. R. Civ. P. 25(d).

U.S.C. § 636(c) and D. Minn. LR 7.2. For the reasons set forth below, the Court grants Plaintiff's motion and denies Defendant's motion.

## II. BACKGROUND

### A. Procedural History

On September 21, 2013,[2] the Commissioner of the Social Security Administration, by way of a written decision issued by administrative law judge ("ALJ") Michael D. Quayle, found Plaintiff disabled pursuant to the Social Security Act, based on her application for Title II DIB that was filed on January 23, 2012. (Tr. 106; *see also* Tr. 97.) Proceeding through the five-step sequential evaluation process,[3] the ALJ found that Plaintiff's severe impairments of diabetes, a back pain disorder with a history of back injury, and asthma caused her to be unable to perform any past relevant work and any jobs that existed in significant numbers in the national economy. (Tr. 103-05.) The ALJ found that Plaintiff had been disabled since May 29, 2010. (Tr. 106.) Though Plaintiff was awarded DIB, the ALJ noted that medical improvement was "expected with appropriate treatment," and, as such, recommended a CDR in 24 months. (Tr. 106.)

---

[2] September 21, 2013 is the comparison point decision ("CPD"). The CPD date is the date that the ALJ signed the most recent favorable medical decision finding that the claimant was disabled. *See* 20 C.F.R. § 416.994(b)(1)(vii).

[3] At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. Step two requires the ALJ to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listed impairment. Before step four, the ALJ determines the claimant's residual functional capacity ("RFC"). At step four, the ALJ determines whether the claimant has the RFC to perform the requirements of her past work. At step five, the ALJ determines whether the claimant can do any other work considering her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)-(f).

### B. Finding of No Disability on Review

Once an individual becomes entitled to DIB, her continued entitlement to benefits must be reviewed periodically. 20 C.F.R. § 404.1594; *see also* 42 U.S.C. § 423(f)(1). The Commissioner initiated a CDR in this case to determine whether Plaintiff's disability continued. *See* 20 C.F.R. § 404.1589. On August 9, 2017, the Commissioner found Plaintiff's disability had ceased as of August 1, 2017, because her condition had improved since the CPD and she was able to work. (Tr. 129.) Plaintiff requested reconsideration of the termination of her DIB. (Tr. 133-34.) Following a hearing before a Disability Hearings Officer, the Commissioner's decision was affirmed. (*See* Tr. 165.) The Disability Hearings Officer found that Plaintiff's "health ha[d] improved" and that she was "able to work." (Tr. 165.) Plaintiff requested a hearing before an ALJ. (Tr. 169.)

A hearing was held before ALJ David B. Washington on June 26, 2019. (Tr. 10; *see also* Tr. 33-47 (hearing transcript).) Plaintiff testified, along with impartial medical expert Dr. Andrew Steiner and impartial vocational witness Kimberly Eisenhuth. (Tr. 10.) Following the hearing, the ALJ issued his decision on August 13, 2019. (Tr. 10-21.) The ALJ proceeded through the eight-step sequential evaluation. (Tr. 12-20.) In this eight-step sequential evaluation process, an ALJ must determine:

> (1) whether the claimant is currently engaging in substantial gainful activity; (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment; (3) whether there has been a medical improvement; (4) if there has been a medical improvement, whether it is related to the claimant's ability to work; (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies; (6) if

3

>there is medical improvement and it is shown to be related to the claimant's ability to work, whether all of the claimant's current impairments in combination are severe; (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of [her] past relevant work activity; and (8) if the claimant is unable to do work performed in the past, whether the claimant can perform other work.

See 20 C.F.R. § 404.1594(f).

At step one, ALJ Washington concluded that Plaintiff had not engaged in substantial gainful activity since the CPD. (Tr. 12.) At step two, ALJ Washington first found that at the time of the CPD, Plaintiff had the following medically determinable impairments: diabetes, a back pain disorder with a history of back injury, and asthma. (Tr. 12.) Since August 1, 2017, the medical evidence established, however, that in addition to diabetes and asthma, Plaintiff had the following additional medically determinable impairments: migraines, fibromyalgia, degenerative disc disease, and obesity. (Tr. 12.) Asthma, migraines, diabetes, fibromyalgia, degenerative disc disease and obesity were Plaintiff's severe impairments as of the date of his decision. (Tr. 12.) ALJ Washington concluded that none of Plaintiff's impairments, or combination of impairments, qualified under a listing in 20 C.F.R. Pt. 404, subpt. P, app. 1. (Tr. 12-14.)

At step three, ALJ Washington determined that medical improvement had occurred on August 1, 2017. (Tr. 14.) Specifically, ALJ Washington wrote:

>The medical evidence supports a finding that, as of August 1, 2017, there had been a decrease in medical severity of the impairments present at the time of the CPD. As discussed herein, the claimant does have moderate limitations in physical health functioning, but as discussed, has had medical improvement. In addition, claimant has had very limited

4

>treatment, which is consistent with non-disabling physical health conditions. The information discussed below will outline the basis for this decision.

(Tr. 14.) ALJ Washington found further that, at the time of the CPD, Plaintiff was found to have an RFC to perform sedentary work with the additional restriction that she would be unable to work full time hours.[4] (Tr. 12.) He found that as of August 1, 2017, however, "the impairments present at the time of the CPD decreased in medical severity to the point where" Plaintiff had the RFC to perform light work, "except that [she] would be limited to occasional bending stooping, and crouching. [Plaintiff] would be limited to frequent handling and fingering." (Tr. 14; *see also* Tr. 18-19.)

At step four, ALJ Washington determined that the medical improvement was related to Plaintiff's ability to work because it had increased her RFC. (Tr. 18.) Because the medical improvement was related to Plaintiff's ability to work, ALJ Washington did not analyze step five and proceeded to step six. *See* 20 C.F.R. § 404.1594(f). At step six, ALJ Washington concluded that Plaintiff continued to have a severe impairment or combination of impairments. (Tr. 18.) At step seven, he determined that since August 1, 2017, Plaintiff was unable to perform past relevant work. (Tr. 19.) At step eight, in conjunction with considering Plaintiff's age, education, work experience, and RFC based on the impairments present since August 1, 2017, ALJ Washington determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 19-20.)

---

[4] A claimant's RFC is defined as the most a claimant can do despite her limitations, including both physical and mental limitations. 20 C.F.R. § 404.1545. The Commissioner's determination of a claimant's RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) quotations omitted).

5

In particular, ALJ Washington determined that Plaintiff could work as a mail clerk. (Tr. 20.) Accordingly, ALJ Washington found that Plaintiff was not disabled since August 1, 2017. (*Id.*)

The Appeals Council denied request for review of ALJ Washington's August 13, 2019 decision. (Tr. 1.) Plaintiff now seeks review of that decision by this Court.

### III. ANALYSIS

#### A. Legal Standard

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citing *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)). "[T]he threshold for such evidence is not high." *Biestek*, 139 S. Ct. at 1154. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). This standard requires the Court to "consider the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The Court does not re-weigh the evidence or review the record *de novo*. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)).

The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Perks*, 687 F.3d at 1091 (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)). "If, after reviewing the record, the

court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ.  *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).  Likewise, courts "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence."  *Pelkey*, 433 F.3d at 578 (quotation omitted).

### B.  Continuing Disability Review and the Medical Improvement Standard

There is no disagreement that Plaintiff was not engaging in substantial gainful activity at the time she was determined to no longer qualify for DIB, and Plaintiff concedes that she has not produced sufficient evidence to show her medical conditions meet or equal a listed impairment.  (*See* Pl.'s Mem. in Supp. at 10, ECF No. 21.)  Plaintiff's sole challenge to the Commissioner's determination to cease Plaintiff's benefits is that the ALJ's finding at step three, that Plaintiff was no longer disabled based on medical improvement, is "not based on substantial evidence on the record as a whole" because the evidence on the record "does not support a finding of medical improvement."  (*Id.*)

"The continuing disability review process involves a sequential analysis prescribed in 20 C.F.R. § 404.1594(f)."  *Delph v. Astrue*, 538 F.3d 940, 945 (8th Cir. 2008) (citation omitted).  Although Plaintiff bears the initial burden to demonstrate that she is disabled, once she has done so, the burden shifts to the Commissioner to show that she is no longer disabled based on medical improvement.  *See Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir.

7

2021) (citing *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001) (in turn citing *Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991) (per curiam) ("If the Government wishes to cut off benefits due to an improvement in the claimant's medical condition, it must demonstrate that the conditions which previously rendered the claimant disabled have ameliorated, and that the improvement in the physical condition is related to the claimant's ability to work.")).

After a finding that a claimant has been disabled, the Commissioner may later determine whether the disability has ceased by applying the medical improvement standard. *Koch*, 4 F.4th at 663 (citing *Delph*, 538 F.3d at 945). Medical improvement is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). "Medical improvement 'must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with' the claimant's impairments 'measured from the most recent favorable decision that the claimant was disabled.'" *Koch*, 4 F.4th at 663 (quoting *Delph*, 538 F.3d at 946-47); *see also* 20 C.F.R. § 404.1594(c)(1). The standard "requires the Commissioner to *compare* a claimant's current condition with the condition at the time the claimant was found disabled and awarded benefits." *Delph*, 538 F.3d at 945 (emphasis added); *see* 42 U.S.C. § 423(f)(1).

"A medical improvement can be found in cases involving the improvement of a single impairment if that improvement increases the claimant's overall ability to perform work related functions." *Timothy M. v. Berryhill*, No. 17-cv-4664 (NEB/LIB), 2019 WL

2016010, at *2 (D. Minn. Jan. 22, 2019) (citations omitted), *report and recommendation adopted*, 2019 WL 1238831 (D. Minn. Mar. 18, 2019). "Whether a claimant's condition has improved is primarily a question for the trier of fact, generally determined by assessing witnesses' credibility." *Muncy*, 247 F.3d at 734 (citing *Nelson*, 946 F.2d at 1316).

### C. The Relevant Administrative Record

#### 1. Findings of ALJ Quayle at the CPD

In his September 21, 2013 decision finding Plaintiff disabled, ALJ Quayle determined that Plaintiff had the severe impairments of "diabetes, a back pain disorder with a history of back injury, and asthma," which did not meet or medically equal a listed impairment. (Tr. 103.) He further wrote the medical evidence indicated Plaintiff had a "left upper extremity tremor, neck pain, and headaches related to [her back injury]. Her back disorder includes diagnoses of low back pain, thoracic pain and lumbar disc herniation." (Tr. 103.) ALJ Quayle found that Plaintiff was limited to sedentary work with the additional restriction that she was unable to work full-time hours. (Tr. 103-04.) He further noted that the record indicated Plaintiff "suffers from neck pain, back pain, arm pain, and leg pain" and that Plaintiff "has reported difficulty walking because of her pain." (Tr. 104.) ALJ Quayle relied in part on Plaintiff's treating neurological physician, Dr. David Dorr, who opined that her pain was "chronic" and "that activity causes pain of an unacceptable level." (Tr. 104.)

#### 2. Hearing Testimony

Plaintiff testified at the hearing before ALJ Washington in June 2019. When asked by ALJ Washington what problems kept her from being able to work, Plaintiff answered

9

that she had chronic pain from her back, including "intense pain" when she tried to do anything for more than 30 minutes at a time. (Tr. 37.) Plaintiff testified that she was "constantly" shifting positions, even when sleeping, because otherwise she "can't move in the morning." (Tr. 37.) Her tremors were "uncontrolled," occurred in all four limbs, and had worsened to the point she was taking medication to control them. (Tr. 37.) Plaintiff testified she had back spasms daily and also experienced headaches. (Tr. 37.) The headaches had "been coming more frequently," and Plaintiff specified, "[i]n the last 90 days, I've had about 80 headaches that kept me from doing anything—or minimized what I could do." (Tr. 37.) When asked by ALJ Washington how long she could stand without switching positions, Plaintiff answered that she could "tolerate it for about 20 minutes" before developing "a lot" of lower back pain. (Tr. 38.) She testified she could walk for "[a]bout half a block" at one time. (Tr. 38.) Plaintiff testified that she would not be able to do a job sitting all day because being in one position would cause pain in her back and she "wouldn't be able to stand upright." (Tr. 38.)

Plaintiff testified that she helped out with work on the farm where she lived when she could. (Tr. 38.) This work was limited to tasks like turning a valve or pump to fill the horses' water or trying to help clean the horse pen. (Tr. 38.) This was accomplished by pushing "stuff" out of the horse pen with a broom; Plaintiff testified, however, "that usually don't last very long before it starts bothering me." (Tr. 38.)

When asked by her attorney if her diabetes had improved since the CPD in September 2013, Plaintiff testified that her diabetes was not well controlled and that in the last 16 months "they were looking at putting me on insulin, because my blood sugars were

10

really high." (Tr. 39.) Plaintiff testified that her back condition had gotten worse since the CPD because her medication had been switched, to add Cymbalta[5] "and then adding primidone[6] for the uncontrolled tremors." (Tr. 39.) Plaintiff testified that she still had asthma, and that since September 2013, "[d]epending on the season, it's about the same." (Tr. 39.) Plaintiff also testified that since the CPD, she had been diagnosed with fibromyalgia. (Tr. 40.) At the conclusion of her testimony, Plaintiff testified to the following:

> Attorney: So, would you say that today, are your capabilities better, less, the same as they were back in September of 2013 regarding how long you could sit, stand, walk, lift, and carry?
>
> Plaintiff: I would say they're about the same or a little less.

(Tr. 40.)

Dr. Steiner, an impartial medical expert, also testified. Dr. Steiner first testified that the record documents diagnoses of asthma, obesity, headaches ("probably migrainous"), and hypertension. (Tr. 40.) Dr. Steiner testified that Plaintiff was involved in motor vehicle accidents in 1999 and 2003, and that there had "been reports of chronic low-back pain," and an MR study had "shown marked degenerative disc disease in the lumbar region." (Tr. 40.) Dr. Steiner testified that Plaintiff's "EMG is reportedly normal," and while Plaintiff had "loss of range in motion in her lumber region" she was "neurologically intact in the lower extremities." (Tr. 40.) Plaintiff had also been treated for chronic neck

---

[5] Cymbalta is a brand name for duloxetine, a medication used "to treat ongoing bone or muscle pain such as lower back pain or osteoarthritis." *Duloxetine*, MedlinePlus, U.S. Nat'l Lib. of Med., https://medlineplus.gov/druginfo/meds/a604030 html (last visited Sep. 28, 2021).
[6] Primidone "is used alone or with other medications to control certain types of seizures." *Primidone*, MedlinePlus, U.S. Nat'l Lib. of Med., https://medlineplus.gov/druginfo/meds/a682023.html (last visited Sep. 28, 2021).

pain; an MR study had shown mild osteoarthritis (though the EMG was normal); and she had lost some range of motion in her neck (though her neurology was intact in her upper extremities). (Tr. 40.) Plaintiff had been diagnosed with fibromyalgia, generalized pain, and diabetes, which was noninsulin dependent. (Tr. 40-41.)

Dr. Steiner testified that while Plaintiff reported having tremors since 1999, medication "has been prescribed to this, which was helpful." (Tr. 41.) Dr. Steiner testified that his review of the record showed that a tremor was observed in one of three neurological examinations in 2018-19. (Tr. 41.)

When asked by ALJ Washington what exertional level Plaintiff could be placed at, Dr. Steiner replied:

> [T]he objective findings here are not great. I think that the record would point primarily to a light residual as far as lifting and time on feet. Additionally, I think there'd be inability to do anything more than occasional bending, and twisting, and stopping, and kneeling, and crawling, and crouching. I think that upper-extremity . . . fingering and handling would be – could be done at a frequent level, but not at a repetitive level.

(Tr. 41-42.) When Plaintiff's attorney questioned Dr. Steiner as to Plaintiff's medical improvement since the CPD in September 2013, the following exchange took place:

> Attorney: Doctor, is there anything in the record that shows that [Plaintiff's] asthma has improved since 2013?
>
> Dr. Steiner: I didn't see anything of that – a comparison of that type, no.
>
> Attorney: Sure. Okay. It'd be the same for the diabetes and . . . the degenerative disc disease, correct? There's, there's [sic] nothing in there –
>
> Dr. Steiner: Yes.

> Attorney: –showing that it's improved?
>
> Dr. Steiner: Correct.

(Tr. 42.)

Lastly, impartial vocational witness Kimberly Eisenhuth testified. When asked a hypothetical by ALJ Washington, Eisenhuth testified that a person limited to light work with occasional bending, stooping, and crouching and frequent, but not continuous, fingering and handling, would not be able to perform Plaintiff's past work. (Tr. 45.) The hypothetical person could, however, perform the duties of a mail clerk. (Tr. 45.)

### 3. ALJ Washington's Decision

As previously noted, ALJ Washington concluded that there had been a decrease in the medical severity of Plaintiff's impairments present at the time of the CPD as of August 1, 2017. (Tr. 14.) This was based on medical evidence which would be discussed further in ALJ Washington's findings. (Tr. 14.) ALJ Washington also noted at this step that Plaintiff "has had very limited treatment, which is consistent with non-disabling physical health conditions." (Tr. 14.)

ALJ Washington next found:

> Since August 1, 2017, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant would be limited to occasional bending, stooping, and crouching. The claimant would be limited to frequent handling and fingering.

13

(Tr. 14.) Under this heading, ALJ Washington stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" based on federal regulations. (Tr. 14.) He also considered opinion evidence. (Tr. 14.)

ALJ Washington then discussed the testimony of Dr. Steiner. He wrote that Dr. Steiner had reviewed the longitudinal evidence, and that "[a]fter citing to the medical record, [Dr. Steiner] opined the claimant would have certain functional limitations" that ALJ Washington adopted as Plaintiff's RFC. (Tr. 14-15.) ALJ Washington found Dr. Steiner's opinion "fully persuasive." (Tr. 15.)

After noting that he had considered all allegations made in written reports, medical records, and testimony, ALJ Washington summarized Plaintiff's testimony. (Tr. 15.) He found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 15.) ALJ Washington then discussed that Plaintiff's RFC accommodated her impairments "to the extent the consistency of the objective medical findings and overall evidence support limitations at all." (Tr. 15.) He found that he was "unable to conclude the claimant is completely unable to work as alleged, due to significant inconsistencies in the records as a whole to support the degree of restriction alleged." (Tr. 15.)

ALJ Washington then summarized Plaintiff's course of care and treatment for her asthma, her diabetes, and her symptoms related to her degenerative disc disease, including

14

migraines and tremors.[7]  (Tr. 15-17.)  This included treatment during the relevant time period, i.e., from the CPD to the date of the report, for Plaintiff's asthma and issues related to her back pain including tremors and headaches.  There is no discussion, however, of the state of Plaintiff's diabetes in 2013, other than noting that Plaintiff had been diagnosed prior to August 1, 2017 and that her symptoms were "well controlled."  (Tr. 15.)

ALJ Washington also considered Plaintiff's obesity and reduced her RFC in order to accommodate this impairment.  (Tr. 17.)  He found that the records of a January 2018 physical consultative examination with Dr. A. Neil Johnson "did not point to any specific limitations" but was consistent with the remainder of the objective evidence and supported the RFC.  (Tr. 17.)

ALJ Washington then discussed opinion evidence.  He found the medical source statement of Dr. David Dorn, Plaintiff's neurologist, non-persuasive and inconsistent with the record.  (Tr. 17-18.)   He then addressed the physical elements of the RFC,  finding the state agency medical consultants' opinions "generally supported, consistent and persuasive with the medical evidence."  (Tr. 18.)  He concluded the section by writing, "[t]he undersigned limited the claimant to the light exertional level with additional postural and manipulative limitations . . . . Overall, this level of functional limitation is consistent with evidence received at the hearing level and is shown in the residual functional capacity."  (Tr. 18.)   ALJ Washington then turned to step four, finding Plaintiff's medical

---

[7] ALJ Washington also discussed Plaintiff's fibromyalgia and obesity.  (Tr. 16-17.)  As fibromyalgia and obesity were not relevant at the time of the CPD, the Court need not discuss it in this analysis.

improvement related to her ability to work because it resulted in an increase of her RFC. (Tr. 18.)

### D. Discussion

The Commissioner contends Plaintiff's argument that ALJ Washington inadequately compared her condition at the time of the CPD and the August 1, 2017 date of cessation "takes too narrow a reading of the ALJ's decision." (Def.'s Mem. in Supp. at 1, ECF No. 23.) According to the Commissioner, ALJ Washington made a proper finding of medical improvement by "stat[ing] he reached his conclusion regarding medical improvements 'as discussed herein' and then in the next section of his decision discussed how the Plaintiff's prior disabling conditions . . . had medically improved." (*Id.* (citing Tr. 15-16).) The Court disagrees with the Commissioner's assessment.

The eight-step sequential evaluation prescribed in the regulations and cited in *Delph*, 538 F.3d at 945, states, in relevant part:

> (f) Evaluation steps.  To assure that disability reviews are carried out in a uniform manner, that decisions of continuing disability can be made in the most expeditious and administratively efficient way, and that any decisions to stop disability benefits are made objectively, neutrally and are fully documented, we will follow specific steps in reviewing the question of whether your disability continues.  Our review may cease and benefits may be continued at any point if we determine there is sufficient evidence to find that you are still unable to engage in substantial gainful activity.

20 C.F.R. § 404.1594(f). The sequential steps follow.  *See id.*  In this instance, Plaintiff concedes at step two that she does not have an impairment or combination of impairments that meet or equal a listed impairment in the federal regulation's appendix. (*See* Pl.'s Mem.

16

in Supp. at 10.)   This brings us to step three, where the regulations provide the Commissioner must ask, "has there been medical improvement as defined in paragraph (b)(1) of this section?  If there has been medical improvement as shown by a decrease in medical severity, see step (4).  If there has been no decrease in medical severity, there has been no medical improvement."  20 C.F.R. § 404.1594(f)(3).  Only if there has been medical improvement should the Commissioner move on to step four, where the Commissioner determines whether this medical improvement is related to a claimant's ability to do work.  *See id.* 404.1594(f)(4).

While ALJ Washington may have summarized Plaintiff's care during the relevant time period, at no point is there a discussion of any medical improvement of the severe impairments found at the CPD: diabetes, a back pain disorder with a history of back injury, and asthma, as was required.  *See* 20 C.F.R. § 404.1594(b)(1).  Nor does the ALJ's decision compare Plaintiff's current condition with her condition at the time of the CPD in order to determine that there was a decrease in the medical severity of these impairments.  *See Delph*, 538 F.3d at 945.  The Court is instead left to guess what evidence supports a finding of medical improvement.  (*See* Tr. 14-18.)  Further, while ALJ Washington gave Dr. Steiner's opinion great weight (*see* Tr. 18), Dr. Steiner's opinion included a statement that there had been no improvement in her impairments present at the time of the CPD.  (Tr. 42.)

It is unclear from the ALJ's opinion that he sequentially found a medical improvement before analyzing whether this improvement was tied to Plaintiff's ability to work.  ALJ Washington first makes a conclusory statement, without citation to the record,

17

that there had been a decrease in the medical severity of the impairments present at the time of the CPD as of August 1, 2017. (Tr. 14.) Failing to explain Plaintiff's medical improvement or conducting any comparison of her condition was improper and leaves the Court unable to determine the basis for ALJ Washington's finding at step three. *See Lucas v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020 ("[W]hile an ALJ's explanation need not be exhaustive, boilerplate or blanket statements will not do.") (internal quotation marks and citation omitted)). And, while the Commissioner states that the ALJ then stated this improvement would be "discussed herein" and that information further below in the decision would "outline the basis for the decision" (*see* Def.'s Mem. in Supp. at 7 (citing Tr. 14)), the following analysis is combined with considerations of Plaintiff's RFC, and does not adequately discuss an improvement of Plaintiff's three impairments.

"The failure to comply with SSA regulations is more than a drafting issue, it is legal error." *Lucas*, 960 F.3d at 1070. It is unclear from the ALJ's opinion which impairments he found medically improved and how. By not properly addressing step three before moving onto step four, the Court cannot determine whether the ALJ's decision is supported by substantial evidence on the record as a whole. The Court will therefore remand this case for further proceedings. In reaching this conclusion, the Court makes no findings as to the ultimate merits of Plaintiff's argument that she has not medically improved since the CPD in September of 2013, and thus continues to be entitled to DIB.

## IV.  CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 20) is **GRANTED**;

2. Defendant's Motion for Summary Judgment (ECF No. 22) is **DENIED**;

3. The Commissioner's decision is **VACATED** as to steps three through eight; and

4. This case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: September  28 , 2021 

      *s/Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Heather J. S. v. Kijakazi*
Case No. 20-cv-1465 (TNL)